## Athey *vs* McHenry.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

### *Mistake.    Easements.*

JUDGE MARSHALL delivered the opinion of the Court.

*The case stated.*   McHENRY filed his bill in the Louisville Chancery Court, alledging that Mrs. E. S. Ormsby had contracted to sell to him 30 feet of ground on Third Cross street, between Chestnut and Prather streets, in the city of Louisville, running back 200 feet to an alley; that the defendant Athey, being the owner of the house adjoining said lot of 30 feet on the North, and said house being, to some small extent, over the line of said 30 feet, and having a door and several windows opening on the South side, said

Athey, in order to prevent his windows from being darkened and his door stopped up, and because his building was slightly over the line, and in order to have an open space between him and complainant, applied to complainant, through his agent, to purchase ten feet of said thirty adjoining Athey's property; and that to accommodate him, the complainant agreed, through his agent, to sell him said ten feet, "but upon the express and clear understanding that it was to be forever left open and not further built upon;" that in order to save trouble and expense, complainant requested Mrs. Ormsby to convey said ten feet directly to Athey, which she did in pursuance of said request, "but upon the understanding and agreement that it should remain forever, an open space between said Athey's house and the house which complainant was about to build, to afford air and light to both;" that he was not present when the deed was executed, and had lately seen it for the first time, when he discovered that it did not contain said agreement and understanding, which he charges was omitted by mistake of the draftsman or some mistake, or by the fraudulent contrivance of Athey. He further alledges that shortly after his purchase, he built a two story brick dwelling house on his ground, on the South line of the ten feet, and erected a brick stable and other valuable improvements, but that Athey, taking advantage of the omission in the deed, had built on the back part of his ten feet, a coal house and another small building, whereby the danger of fire to complainant's stable and other buildings was greatly increased, and had also nailed up boards near the windows in the North side of complainant's house, so as to cover them and to exclude both light and air from complainant's house on that side; and he prays that the deed to Athey may be corrected, that he may be ordered to remove the buildings erected on the rear of said ten feet, and also the frames by which said windows were darkened, &c., and that he be restrained from erecting any further improvements on said ten feet, and for general relief.

The answer of Athey denies the agreement or understanding as alledged, and denies that there was any fraud or mistake in omitting it from the deed. His affirmative

and explanatory statements need not be detailed. The Chancellor on hearing, being of opinion that the agreement as alledged, was proved to some extent at least, and that it was omitted from the deed by mistake, rendered a decree ordering Athey to remove the buildings erected on the rear of the ten feet, and restraining him and those claiming under him, forever from erecting any other building on any part of said lot of ten feet front; but being of opinion that the agreement, as proved, contained no stipulation for light and air in favor of McHenry, refused relief on that subject. To reverse this decree, Athey has appealed to this Court, complaining that there was no ground for the relief granted, and McHenry has filed cross errors complaining that Athey was not ordered to remove the obstructions placed before his windows.

It will be observed that the two statements of the alledged agreement or understanding, as contained in the bill, differ essentially from each other. The first might be understood as applying it to the whole space of ten feet in width, extending from the street to the alley, while the other implies clearly, that it related only to that part of this space which was between Athey's house on the one side, and the house to be built by the complainant on the other, and introduces the idea not expressed in the other statement, that the space between the two houses was to be left open for the benefit of light and air to both, as being a part of the agreement. This last agreement being the one which, according to the bill, should have been inserted in the deed, but was omitted by mistake or fraud, the claim to relief being founded on that omission, must be limited to the same agreement or so much of it as is proved.

A party seeking to set up in chancery a restriction in the use and enjoyment of a purchase, by an alledged parol agreement, must be confined to the agreement set out in his bill, though the proof may exceed the allegation.

We come to the same conclusion as to the extent of the agreement relied on, by regarding the second more detailed statement as the complainant's own exposition of the more general terms of the first statement, and as showing what he himself meant in using those terms as descriptive of the agreement or understanding on which he relies. Considering the complainant then as setting up and claiming the benefit of an agreement which is restricted by its terms, to that part of the [ground which lies

between the two houses referred to, we think it clear that he is entitled to no relief based upon an extension of these terms to that part of the lot which is situated not between these two houses, but to the rear of both. Any relief to which he might be entitled, must be subject to this restriction, even if the proof clearly established an agreement covering the whole extent of the lot.

But upon looking to the evidence in support of the bill, we find no explicit reference made by any witness, to the back part of the lot, but its tenor is, that Athey was allowed to purchase the ten feet at $20 per foot, (the same price that McHenry was to have given for it,) "provided" or "on condition" that it should always remain open, &c. And although this general reference to the ten feet, should, like the same reference in the first statement of the agreement in the bill, be understood, *prima facie*, as importing a reference to the whole space of ten feet by two hundred, it is in itself vague and indeterminate, and is certainly susceptible of explanation and restriction by reference to all circumstances which may indicate the real intention and understanding of the parties. These circumstances might be referred to as affecting, to some extent, the construction of a written contract,; and much more, in this case where we are not expounding written words, but endeavoring, from the testimony of witnesses, to ascertain the extent and nature of a parol agreement or understanding, of which there was no exact and permanent memorial. Looking then the subject of this agreement, to the relative situation and attitude of the parties, to the interest which each may have been supposed to have had in preventing the erection of any building upon the ground in question, to the objects and advantages to be attained by each from such prevention, and to the degree in which that object may be presumed to have operated on either as an inducement to the arrangement by which Athey was permitted to take the purchase which McHenry had made of this slip of ten feet, we might be at least prepared for the conclusion that neither of the parties contemplated any restriction upon the use of the lot purchased by Athey, except as to the front part, situated between the two adjacent houses, one of which was

occupied by Athey, and the other intended to be imme-
diately built by McHenry; and when we find the com-
plainant himself, after using the same general terms which
the witnesses use in describing the extent of the subject
to which the agreement was applicable, expounding it in
terms which restrict it to the front part of the lot, we
should not hesitate to apply the same exposition and with
the same effect to the general and indefinite language of
the witnesses.

We add, as applicable to this part of the case, but
more especially to that which relates to the use of the
area now in question, for light and air, a consideration
which arising on the face of the bill, presses itself on the
mind still more forcibly in the progress of the case; and
that is, whether this is not an attempt to impose upon
Athey, as a stipulation burthensome to him and highly
advantageous to the complainant, an understanding as to
the ground remaining open, which was intended for
Athey's benefit, which in fact constituted the chief if not
the sole inducement to the purchase on his part, and as
to which, if any benefit which might result from it to
McHenry, constituted any appreciable part of the induce-
ment on his part for making the arrangement, that benefit
was regarded as being sufficiently secured by the interest
of Athey in having no building erected on the space im-
mediately adjacent to his own house, whereby his win-
dows and door would be rendered useless.    Without de-
tailing the circumstances in addition to those mentioned
in the bill, which give force to this consideration, it is
sufficient now to say, that it furnishes a motive and a
ground for restricting, as far as may be, without injury,
the constructive effect of the proof relating to this alledg-
ed understanding.    There was undoubtedly an under-
standing that the front part of the lot of ten feet, should
not be built upon.    This was Athey's only inducement
and his avowed object in making the purchase.    But it
was for his own benefit that he did not want it built on.    It
was for his own benefit that he bought it.    He did not
buy it and pay for it as much as McHenry was to have
paid, for the benefit of McHenry, nor in order to secure
to McHenry an open space by the side of his house, but

*A party purchas-
ing a part of a
lot adjoining to
prevent others
from joining his
building, is pre-
sumed to have
purchased for h's
own benefit of
light and air and
not for the bene-
fit of ligt and air
for vendor.*

in order to secure to himself an open space by the side of his own house. And although McHenry might derive a consequential advantage from the ground being left open, and might, in view of this advantage, have preferred Athey's becoming the owner rather than that another should have owned it who had no interest in not building upon it; and although he might not have sold it at all to be built upon, nor without an understanding that it was not to be built upon; and although, therefore, he might have allowed Athey to take his place in the purchase of it only because Athey avowed his intention that it should remain open, and was purchasing for the very purpose of preventing its being built upon, and would be restrained by his own interest and convenience from building on it; and although in this sense, this understanding might have been the condition of Athey's purchase, still it would not follow from all this, that the parties intended or understood either that Athey should be under any other restriction in regard to the full use and enjoyment of his purchase, except that which was implied in the avowed object of making it, viz: the prevention of any building which would obstruct his windows and door on that side, or that McHenry should enjoy any other advantage or privilege in regard to the ground in question, except that which would necessarily result from the accomplishment of Athey's own purpose, viz: that there would be no building abutting against his house on that side; and certainly it would not follow that according to the intent and understanding of the parties, McHenry was reserving to himself and Athey was stipulating to allow to him the free use of the light and air of this open space, with the privilege, by means of windows and doors, of overlooking the arrangements and movements, and invading the privacy of Athey's family.

The proof in this case does not establish any such intent or understanding, and in our opinion the circumstances clearly indicate the contrary. One witness, and he is the individual who assumed the right of allowing Athey to make the purchase, says he agreed to it, "provided it should never be built upon, nor any obstruction put upon it, and should be kept forever open for light

A witness who is immediately interested in proving a parol contract for an easement, is not competent to prove a parol contract made for its enjoyment.

and air," a second witness, whose knowledge derived from the statement of the first, made in presence of Athey and not denied by him, says the condition as stated, was that "it should always remain open and not built upon;" a third witness present at the same conversation, says the condition was that "it was always to remain free of obstruction." If the first witness were competent, he stands alone in stating that any express reference was made to the benefit of light and air, and even he does not state explicitly that this benefit was reserved for the house of McHenry. But in truth, he seems to be the real though not the nominal party interested in this controversy. McHenry seems to have had no personal agency in this whole matter. The lot was contracted for and conveyed in his name for the benefit of the witness or his family, and that a house might be built on it for him or them. The witness, as has been stated, disposed of a part of the purchase to Athey. He directed the construction of the building. The evidence conduces strongly to show that he paid, or is to pay for it. He occupied it as soon as it was habitable and still occupies it. He had the windows cut on the side next to Athey's ground, and he is in fact the party immediately, and at present, solely interested in the contest, and especially with regard to the privilege of light and air. We are of opinion therefore, that he is an incompetent witness, and that his deposition having been excepted to on the ground of interest, should be disregarded. His deposition being rejected, there is no direct evidence of any express agreement on the subject of light and air; and so strong are the circumstances tending to show that the parties did not intend or understand that any privilege, or easement, or encumbrance upon or with respect to the slip of ten feet, was reserved or granted to McHenry, unless it were in the mere restriction as to building on the front part of it, that in our opinion they not only repel any inference in favor of McHenry's right to the benefit of light and air from this slip, which might be implied from the restriction as to building on it; but if the rejected deposition were admitted, they are sufficient to defeat the effect of the insinuation therein made, but without express assertion, that the benefit of light and air

from this open space was intended for McHenry's house as well as that of Athey. Such a privilege unrestricted, would have caused an annoyance, and would in fact have constituted an incumbrance and injury to Athey's property, which, in the opinion of some of the witnesses, was equal to the entire price of the slip of ten feet, and would have defeated entirely, the advantage of the purchase. In the view of all, it must have constituted a valuable privilege on the one side, diminishing considerably the value and enjoyment of the property on the other; and for this there was no consideration. Athey gave a full price in money for the ground; and although it was an accommodation to him to get it at a fair price, it was also an occommodation to McHenry to get rid of it, as he had to purchase or contract for two lots of thirty feet each, when he only wanted a front of forty-five feet; and he expected an advantage also, from having no building to adjoin his on the north. But further, there was no mention made of this privilege, which is now attempted to be established on the vague understanding that the ground was to be left open and not built on; and that it was not contemplated is shown, not only by this silence, but by the fact that the house to be built on McHenry's ground was not intended to have any opening on the North side; and that when, after the house was built up with a dead wall on that side, and the plastering and painting were in progress, it was thought to be desirable to have openings in that wall, permission was asked from Athey, upon whose alledged consent some stress is layed in the evidence. It appears too, that Athey erected the two small buildings on the back part of his ground, while the front building on McHenry's lot was in progress, and without objection at the time.

These circumstances show, that according to the understanding which the parties had of their own contract and of their respective rights, Athey was under no restriction as to the back part of his lot, and that even if he was bound not to build on the front part, this was the only restriction upon his rights, and no privilege of light and air from that side was intended to be secured to McHenry; and in a case where the object is to set up and establish,

on parol evidence, the understanding of the parties, these evidences of what their understanding was, cannot be disregarded.

McHenry had unquestionably the right to make openings in the North side of his house, whether the privilege of light and air from the adjacent area was secured to him or not. But unless such privilege was secured to him, Athey had also a right to erect on his own ground, and as near the openings as he could, such frames or blinds as would obstruct the view of his premises, and secure his exclusive use and enjoyment of his own property. And McHenry, or the occupant of his house, had no right to complain of these obstructions, or to have them removed, though he may himself have intended, or attempted, by fixing blinds in his own wall, to prevent or circumscribe the view of Athey's premises from his windows. Whatever may be said on the score of good neighborship, or a spirit of accommodation, Athey was not bound to trust to his neighbor for the protection of his rights.

These views lead necessarily to the conclusion that the decree is erroneous, in ordering the removal of the buildings erected by Athey on the back part of his lot, and in enjoining him from erecting any other buildings on any part of the lot, and that there is no error in refusing to order the removal of the obstructions or blinds erected by him in front of the windows in the North side of McHenry's house. But the question remains, whether Athey should be restrained by injunction in this suit, from erecting any building on the front part of his lot; and on this question we have felt some difficulty in coming to a conclusion. We have assumed, however, in the former part of this opinion, and think it may be fairly inferred, that the understanding that Athey would not build on the front part of the slip of ground in question, and the greater safety of the house to be erected on the adjoining lot of McHenry, may have constituted to some extent, the inducement, or consideration, for letting Athey have the benefit of McHenry's contract with Mrs. Ormsby, to the extent of ten feet front. And although the parties may not have thought of any other security for this advantage

*The omission to insert in a deed a material reservation or easement to the grantor, corrected by the Chancellor upon parol proof thereof, and of mistake, in not inserting it in the conveyance.*

to McHenry, but that which would result from Athey's own convenience and interest in keeping the front part of his lot open, and it is extremely doubtful whether they intended that it should be secured in the deed, or in any other writing; since it was not communicated to the grantor, and the draftsman was not directed to insert it in the deed, and there was no attempt to put the agreement in any writing to be executed by the parties to it; and certainly there was no fraud on the part of Athey, by which it was omitted from the deed; still as this understanding or agreement was communicated by one of the parties, in presence of the other, to the draftsman of the deed, who was acting as agent in the sale of the lot, as the condition in which Athey was let into the purchase, it should perhaps be inferred that he was expected to make proper mention of it in the deed; and especially as he proposed that the deed for the ten feet should be made directly from Mrs. Ormsby to Athey, without any conveyance of that part to McHenry, who in executing the deed, if he had done it himself, would have had an opportunity to secure his own interests. This being assumed, the deed, either by mistake or inadvertence, or carelessness of the draftsman, has failed to carry out the intention of the parties, and to secure to one of them a benefit which constituted a part of the consideration of the purchase, while it secures to the other every contemplated advantage on his side, and more than was contemplated, since the intended benefit to the other side, would have been a restriction upon him. This state of things might be remedied by a rescision of the contract, if the parties could be placed in *statu quo*. But as this cannot be fully done, and does not seem to be desired, the equity of the case authorizes and requires that the intended restriction should be secured and enforced by the decree of the Chancellor.

Wherefore, the decree as rendered is reversed, and the cause is remanded, with directions to render a decree enjoining Athey and those who may derive title from him, from ever erecting any building upon that part of the slip of ground in question, which lies between the

two adjacent houses, on the North and South sides there-of.  And Athey is to have his costs in this Court.

*Pirtle and Ballard* for appellant : *Duncan and Ripley* for appellee.