McDONALD *et al. v.* YUNGBLUTH *et al.*

*(Circuit Court, S. D. Ohio, W. D.* July 11, 1891.)

**1. SPECIFIC PERFORMANCE—VENDOR AND VENDEE—TRUST.**
It is no objection to a specific enforcement of a contract to convey land that the legal title is held by one not a party to the contract, where such person is a party to the suit, and it appears that he holds the title in trust for the vendors.

**2. SAME—STATUTE OF FRAUDS.**
Where one who has agreed to sell certain land receives the full consideration therefor, and then fraudulently gives a deed conveying only part of the land, a specific enforcement of the contract may be had in equity, even though the contract was oral.

**3. SAME—LACHES.**
Where the relations between vendor and vendee are so intimate and friendly that the vendee has every confidence in the vendor, the vendee's failure to examine the deed before accepting it does not prevent him from seeking equitable relief, where the deed does not conform to the contract of sale.

In Equity.

*Ramsey, Maxwell & Ramsey* and *Stephens, Lincoln & Smith,* for complainants.

*Archer & McNeil* and *Follett & Kelley,* for respondents.

SAGE, J. The testimony in this cause sustains the averments of the bill that, shortly prior to the date of the deed hereinafter mentioned, the respondents, John Yungbluth and Stephen Yungbluth, Jr., entered into an oral agreement with the complainants to convey to them, by general warranty deed, a tract of land lying in the city of Cincinnati, Hamilton county, Ohio, and in that part of the city known as "Columbia," the same being on the bank of the Ohio river, and known as the "Yungbluth Bros.' Coal Elevator Property," containing in all about 3.26 acres; in consideration whereof complainants were to assume and pay $18,000 indebtedness of said John and Stephen Yungbluth, evidenced by their promissory notes, upon which complainants were indorsers, and, in addition, to furnish to said respondents $5,000 worth of coal; the total consideration being $23,000.

The deed, which was executed January 25, 1890, conveyed only a portion of said tract, containing 1.74 acres of land. The bill charges that said respondents fraudulently, knowingly, and willfully conveyed the 1.74-acre tract instead of the entire tract aforesaid. It is further averred that complainants were ignorant of the fraud practiced upon them, and of the fact that the deed conveyed only a portion of the property contracted for, until it was left for record on the day of its execution, and the consideration had passed; and that, relying upon the good faith of the respondents, they believed that the deed correctly described the entire tract known as the "Elevator Property." Upon discovering that it did not describe the entire tract, they demanded of respondents a further conveyance, according to the terms of the oral agreement, which they refused, and still refuse, to execute.

These charges are made out by the evidence, and the complainants are entitled to a decree for a further conveyance as prayed, unless the

points made upon the law of the case for the respondents are well taken. These are as follows:

1. It appears from the evidence that the title to the portion of the tract not conveyed was not in said respondents, but in their mother, Johanna Yungbluth, who was no party to the deed executed, nor to the agreement claimed. That is all true, but it is also true, as is established by the evidence, that the legal title was and is in Johanna Yungbluth, in trust for her sons, said John and Stephen, Jr., and subject to their direction and control, and that by the terms of the agreement they undertook to secure a transfer from her, and convey the entire tract to complainants. Johanna Yungbluth is a party respondent, and, if the equity of the cause is with the complainants, there can be no doubt of the power of the court to make a decree compelling her to convey, either directly to complainants or to her sons, and that they then convey to complainants, as they agreed to do.

2. It is argued that the relief prayed for cannot be granted, for the reason that it would be the enforcement of a contract relating to real estate which was never reduced to writing, and that there has been no such part performance as to take the case out of the statute of frauds; citing *Glass* v. *Hulbert*, 102 Mass. 24, which directly sustains the proposition stated, as do *Elder* v. *Elder*, 10 Me. 80; *Osborn* v. *Phelps*, 19 Conn. 63; *Westbrook* v. *Harbeson*, 2 McCord, Eq. 112, and *Best* v. *Stow*, 2 Sandf Ch. 298, and the English cases therein cited.

It does not appear from the bill that the agreement was oral, but that fact is fully developed in the testimony. The statute is not pleaded by the respondents, but they rely upon *May* v. *Sloan*, 101 U. S. 231, and *Dunphy* v. *Ryan*, 116 U. S. 491, 6 Sup. Ct. Rep. 486, which hold that, where an agreement for the sale of lands, alleged in a bill in equity praying for specific performance, is denied by the answer, the defendant, where there is no written evidence of such agreement, may, at the hearing, insist on the statute of frauds as effectually as if it had been pleaded. That is no new rule. It is to be found in the text of Sugden on Vendors and Purchasers, and it is supported by a long list of authorities cited in a foot-note to section 511 of Browne on Frauds. But the respondents in this cause do not deny making an agreement to convey to complainants their coal-elevator property. On the contrary, they expressly admit that they did make such an agreement, and then deny that that property embraced or included any more than was conveyed by them to complainants, and they go on to aver that they have fully performed their agreement. The court finds that, as a matter of fact, they have not performed their agreement, and that they have dealt fraudulently with the complainants. In this state of pleading and of fact, how can it avail them to appeal to the statute of frauds?

But, aside from this, let us look at the matter, treating the cases in 101 U. S. and in 116 U. S. and 6 Sup. Ct. Rep. and in 102 Mass. as in point, and we shall find that the overwhelming weight of authority is against the ruling in *Glass* v. *Hulbert*. The complainants in this case have not been put in possession under the deed delivered to them. They have paid the

$18,000, which they agreed to assume, and for which they were, prior to the agreement, liable as indorsers. But that was not part performance. The question is, where the contract for a conveyance of land must be in writing to be enforceable, and the contract is oral, and the deed fraudulently so made as to omit part of the tract included in the contract, has a court of equity the power,' notwithstanding the statute of frauds, to afford relief by a decree for a conveyance in accordance with the oral contract? The supreme court of Massachusetts in *Glass* v. *Hulbert*, says, "No." Chancellor KENT, in *Gillespie* v. *Moon*, 2 Johns. Ch. 596, says that it would be a great defect in what Lord ELDON terms the "moral jurisdiction" of the court if there were no relief for such a case. Justice Story also was of the opinion that the relief could be granted. See Story, Eq. Jur. §'161, and cases cited. Pomeroy, in his work on Contracts, (Specific Performance,) at section 264, declares that the preponderance of judicial authority in this country, by courts and jurists of the highest character, is that where, by reason of fraud, the written instrument fails to express the actual agreement, whether the variation consists in limiting the scope of the writing or in enlarging it so as to embrace land omitted through mistake or fraud, relief may be granted by making the writing conform to the agreement, although the agreement was oral, and of the class required by the statute of frauds to be in writing. Numerous authorities are cited in a foot-note in support of this view. To .the same effect see *Murray* v. *Dake*, 46 Cal. 648, and cases there cited, and *Hitchins* v. *Pettingill*, 58 N. H. 386, reviewing *Glass* v. *Hulbert*, and citing a large number of cases to the contrary. See, also, cases cited in note 4 to section 85, Adams, Eq., (8th Ed.,) and *Beardsley* v. *Duntley*, 69 N. Y. 580, which also comments upon and disapproves *Glass* v. *Hulbert*. See *Flagler* v. *Pleiss*, 3 Rawle, 345; *Blodgett* v. *Hobart*, 18 Vt. 414; *Moale* v. *Buchanan*, 11 Gill & J. 314; *Worley* v. *Tuggle*, 4 Bush, 182; *Provost* v. *Rebman*, 21 Iowa, 419; *Hunter* v. *Bilyeu*, 30 Ill. 228; *Durant* v. *Bacot*, 13 N. J. Eq. 201, and *Wyche* v. *Greene*, 16 Ga. 49. So in Ohio. *Davenport* v. *Scovil*, 6 Ohio St. 459; *Ormsby* v. *Longworth*, 11 Ohio St. 653. The weight of authority clearly determines this question in favor of the complainants.

3. It is contended that complainants are not in a position to seek relief, because, if deceived, it was by reason of their own negligence and default in failing to examine their deed before accepting it. The insurance cases cited recognize this rule, and apply it to the case of one signing an application for a policy, but it has no application here. Such were the relations of the parties, so close the friendship of the complainants for the respondents, and so entire their confidence and trust in them, as disclosed by the evidence, that the respondents ought not now to be allowed to plead that the complainants were not on their guard, watching to prevent a fraud which they should have suspected.

Let there be a decree for the complainants, with costs.