# Rudy, et al. v. Rudy, et al.

(Decided November 2, 1911.)

## Appeal from Daviess Circuit Court.

Guardian and Ward—Action to Sell Infants' Real Estate—Purchaser's Bond—Liability of Surety.—In an action to recover of the principal and surety the interest of the wards in the price of real estate sold, the action as to the surety company was dismissed, and this ruling is the single question presented upon appeal. Held, that the sale was void because the bond required by section 493, Civil Code, was not executed prior to the entry of the judgment directing it, and under the terms of the bond no liability attached to the surety of the guardian because the money which he received as the purchase price of the land was not paid him in his capacity as guardian. Therefore, the surety having obligated and bound itself to be answerable only for such moneys as came to the hands of the guardian by virtue of his office, was not answerable therefor.

SWEENEY, ELLIS & SWEENEY for appellants.

BEN D. RINGO, LaVEGA CLEMENTS for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Olive Rudy, wife of Charles Rudy, died in February, 1896, leaving surviving her her husband and two minor children, Mary J. and Delilah. At the date of her death she owned a house and lot on Water Street in Owensboro, Kentucky. In this real estate her husband, Charles, owned a life estate and her two minor children, Mary J. and Delilah, owned the fee. On January 23, 1907, Charles Rudy was appointed guardian for his two minor children by the Daviess County Court. He qualified as such and executed bond with the American Surety Co. of New York as his surety. His wards owned no personal property whatever, and their entire estate consisted of their remainder interest in this house and lot. Shortly after his qualification as guardian he instituted a suit in the Daviess Circuit Court, in which he sought a sale of this house and lot under article 3 of section 489 of the Code for the maintenance and education of his two wards. The infant defendants were properly brought before the court and such proceedings had that the case was, on June 1, 1907, submitted for judgment; and the Chancellor, upon a consideration of the pleadings and exhibits, entered a judgment directing a sale of the prop-

erty for the support and maintenance of the said two infant defendants, the court holding "that the best interest of the infant defendants, Delilah Rudy and Mary J. Rudy, require that their interest in said lot of land shall be sold for their maintenance and further education."

Under this judgment the property was sold on July 15, 1907, one Alice Frakes becoming the purchaser thereof for the sum of $1,950. She executed bond to the guardian, Charles Rudy, for the purchase price, and he became her surety on said bond. On the day following the sale she paid to Charles Rudy the full purchase price, to-wit, $1,950, and took his individual receipt therefor. The sale was reported to court by the Commissioner at the September term, 1907, and was confirmed on the 7th day of September, and the property was, under order of the court, conveyed to the purchaser on February 19, 1908.

Thereafter Charles Rudy was removed as guardian, and one Samuel James, Jr., appointed in his stead. The latter, following his appointment and qualification, called upon the former guardian for the money which he had received from the sale of this property, and, upon his failure to pay same, instituted a suit in the Daviess Circuit Court, wherein he sought to recover of him as guardian, and of his surety, the American Surety Company, his wards' interest in the price of the real estate, to-wit, $1,950, which he had received from the purchaser. A separate suit was instituted on behalf of each ward, Delilah in the meantime having married, and being known in the record as Delilah Sorter. These suits were later consolidated and heard together.

Charles Rudy answered, admitting the receipt of the money, claimed a certain portion thereof as belonging to him—this being the estimated value of his life estate in said property, alleged that he had invested the remainder in property that he regarded as safe, but that the investment turned out to be bad, and he had lost the greater portion thereof, claimed a credit upon account of sums expended for his wards for board and education, and admitted an indebtedness of $252.60, which he offered to pay.

The Surety Company filed its separate answer, and, among other things, pleaded that the suit for a sale of this property was instituted by the guardian under section 489, sub-section 3 of the Code for the purpose of raising money to maintain and educate his infant wards, that prior to the entry of the judgment directing a sale

of this property no bond was given by the guardian, as provided by section 493 of the Code; and for this reason the sale was absolutely void.

The court held this plea good and dismissed the petition as to the Surety Company, but rendered judgment against the former guardian for the amount found to be owing by him. The plaintiff, being dissatisfied with this ruling, appeals. The correctness of the court's ruling in holding the surety not liable is the single question presented upon this appeal.

The covenant of the bond, under which appellants seek to hold appellee responsible for their interest in the proceeds of the sale of this house and lot, is "that the said Charles Rudy will faithfully discharge the trust of guardian to said minors in all respects as required by law." It is contended for appellee that it is not liable to appellants on said bond for this purchase money because it did not come to the guardian's hands as guardian, but as an individual; that the sale being absolutely void because the bond required by section 493 of the Code was not executed prior to the entry of the judgment directing it, no liability attached to appellee as surety of the guardian, Charles Rudy, because the money which he received as the purchase price of this property was not paid to him in his capacity as guardian.

It is well settled that a surety on a guardian's bond il liable only for such personal property of his wards as comes to his hands by virtue of his office. He may not sell his ward's real estate without the aid of the Chancellor, and it can then be sold only in strict compliance with the statutory provisions regulating same. The covenant of the surety was that the guardian would discharge his trust as required by law. This is the measure of its responsibility, and it is liable under said bond only for such monies as the guardian had legal right to receive by virtue of his office.

This is not a new question. In Irving v. McDowell, 4 Dana, 629, this court had under consideration a case where the guardian had sold the land of the infants, conveyed it by deed, received the purchase price, and thereafter defaulted. His wards, upon arriving at age, sought to recover of him and his bondsman the price realized from this land. The surety defended on the ground that it was not liable for money realized from a sale of the land because the guardian had no authority in law to

make the sale. In upholding this contention, the court said:

"And if it were not the duty of Cleland to receive the proceeds of sale as guardian of the plaintiffs, it seems to us almost self-evident that McDowell is not responsible, for he should not be held liable for money received by Cleland, which it was not his duty, as guardian, to receive, and which, in fact, he ought not to have received; and which, too, in the language just quoted, was not 'rightfully' received. The receipt of such money, under such circumstances, was not an official act done on official responsibility, but was altogether a personal act, in violation of official trust, and done on personal responsibility. And a surety guarantees only the official conduct of the guardian."

And continuing, the opinion further says:

"If the guardian himself buy the land of his ward, is his surety liable for the price? Certainly not. The ward's security is the land itself, and his elective right to restitution of it. He cannot, when he becomes twenty-one years old, make the surety responsible by electing to confirm the voidable sale. He then is competent to act for himself; and if, knowing that he may hold his land, or look to his guardian personally for it, he elect to confirm his contract and take the personal obligation of the purchaser, he cannot bind the guardian's surety."

The only difference between the case from which we have quoted and the case at bar is that, in the former case, the guardian, without right or authority in law, sold the land, whereas, in the case at bar it was sold under a void judgment; and, under the express provision of the Code, the sale and conveyance made thereunder were absolutely void and of no effect.

This same principle was recognized and upheld in the more recent case of Elliott v. Fowler, 23 Rep. 1676, in which the court, speaking through Judge O'Rear, after reviewing all the authorities upon this subject, states:

"It is not a sound public policy that would tempt perfidy in dealing with infants' estates, or at best condone their neglect by those entrusted with them, and put a premium upon carelessness. That course is better that admonishes alike guardians and purchasers, that before they can divest the infant of his land, they must look carefully, under pain of loss, to a strict compliance with the law. The legislature has provided the manner, and for what purpose alone, an infant's land may be sold. It

had the undoubted right to so provide, or even to withhold altogether such right of sale. What sufficient reason could be urged upon us to justify our allowing the infant's title to be passed for a different purpose, or in a different manner, than the law-making body of the State has seen fit to provide? We can conceive of none. We, therefore, hold that when the proceedings show that the statutory ground or necessity for selling the infant's lands do not exist, or where the bond required by the Code, section 493, has not been executed, the judgment and sale are void. The infant loses no rights under them, and the purchaser takes none."

This same principle has been recognized and upheld in the cases of Barnett v. Bull, 81 Ky. 127; Fritsch v. Klausing, 11 Rep. 788; Isert v. Davis, 17 Rep. 686; Loeb v. Strunk, 19 Rep. 935; Hicks v. Jackson, 24 Rep. 218; and Connell v. Connell, 115 S. W., 195.

The sale in the case at bar not having been made in conformity with the requirements of the statute, in that no bond was executed prior to the entry of the judgment directing the sale, it was absolutely void. The purchaser took nothing by reason of her bid and purchase. The title to the land still remained in the infants, and the guardian was no more authorized in law to receive the purchase price for this land when so sold than he would have been had he attempted to make the sale without the advice or aid of the Chancellor. This being true, the purchase price which he received for this land did not come to his hands under or by virtue of his office; and hence his bond was not answerable therefor.

The case of Mahan v. Steele, 22 Rep. 546, is cited and relied upon by appellants as supporting a contrary view. In that case a sale was sought for the purpose of distribution, under section 490 of the Code, on the ground that the property was indivisible. The Code expressly provides that in that class of cases it is not required that a bond shall be executed before the order directing the sale is entered; hence that case in no wise conflicts with the opinion in the cases which we have cited as supporting the ruling of the Chancellor. The sale in that case was valid, and the court so found; and therefore the infants' share of the proceeds thereof, which was paid over to the guardian, came to his hands by virtue of his office, and his surety was properly answerable therefor under the covenant that the guardian would faithfully discharge the trust in all respects as required by law,

i. e., that he would pay over and account for all monies that came to his hands by virtue of his office.

Just the converse of that proposition is here presented. The sale being void, title to the land was still in the infants, and the guardian was without authority to sell same, and the money which he received from the purchaser under this sale did not come to him by virtue of his office, and his surety having obligated and bound himself to be answerable only for such monies as came to his hands by virtue of his office, was not answerable therefor. The Chancellor correctly so held.

Judgment affirmed.