## Logan v. Langan.

(Decided November 29, 1911.)

### Appeal from Whitley Circuit Court.

1. Equitable Defense—Trial at Law.—When an answer presents an equitable defense and the plaintiff does not ask that the action be transferred to equity, he cannot complain on appeal that the case was tried at law and not in equity.

2. Written Contract—Plea—Failure of Consideration.—In a suit on a written contract to recover money, the defendant may plead a failure of consideration, and that a part of the agreement was omitted from the written contract by mistake.

3. Lessor—Failure to Keep Property in Repair.—At common law the lessor is not bound to keep property in repair during the time covered by the lease but if he agrees to do so, and does not keep the property in repair, the tenant may abandon it, and terminate the contract when the property becomes unfit for the purposes for which it was intended.

GILLIS & GILLIS, SHARP & GATLIFF for appellant.

TYE & SILER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

On November 24, 1907, Dr. P. W. Logan leased to Howard and Langan a storehouse he owned in Corbin, Kentucky, for three years in consideration of $65.00 a month to be paid in advance on the 24th day of each month. The lease among other things contained this clause:

"Said second parties (Howard and Langan) bind themselves to return to said party of the first part or his heirs or assigns the said property herein named at the termination of this lease, the said house in as good condition as it was when received by them less ordinary wear and tear thereon."

The lease contained no clause binding Dr. Logan to keep the property in repair during the term. Soon after the lease was made, Howard sold out to Langan. Langan paid the rent regularly on the 24th of each month up to March 31, 1909, and on that day he moved out, surrendering possession of the property to Dr. Logan. The property remained vacant for some time; Dr. Logan finally got another tenant at a less rent, and he brought this suit against Langan to recover the rent at $65.00 for the remainder of the term, less what he had gotten from the other tenant. Langan by his answer alleged that in the contract between them Dr. Logan covenanted to keep the storehouse in good repair during the full term of the lease so that it would answer the purpose for which it was leased to them; that the covenant to that effect was by mutual mistake of the parties thereto, as well as by mistake of the draftsman, omitted from the writing; that Logan suffered the house to be out of repair; that the roof leaked and one of the walls was bad, so that the building was unsuitable for a hardware store, the purpose for which it was rented and used. He also alleged that by reason of the leaking roof his stock of goods was damaged; that he notified Dr. Logan to make the repairs and Logan undertook to do so but failed to stop the leaks, and finally on March 31, 1909, he was compelled to move out. He made his answer a counterclaim and prayed judgment over against Logan. The allegations of the answer were controverted by a reply. Neither party asked that the action be transferred to equity, and it was, without objection from either of them, submitted to a jury, who found for Langan. The court entered judgment on the verdict and Dr. Logan appeals.

It is insisted for Dr. Logan that Langan could not maintain his defense without first obtaining a reforma-

tion of the contract and that he did not in his answer and counterclaim ask a reformation of the contract or ask that the action be transferred to the equity docket for that purpose. While a reformation of the contract was not specifically prayed in the counterclaim, there was a prayer for all proper relief, and this was sufficient, as the allegations of the counterclaim were controverted by the reply, and the whole matter was before the court. Dr. Logan made no motion to have the action transferred to the equity docket and he cannot complain here that it was not transferred to the equity docket when he took his chance of winning before a jury without asking that the action be transferred to the equity docket. If the case had been transferred to the equity docket, the chancellor might have submitted to a jury the issue of fact as to the mistake in reducing the contract to writing, and the court here, after the verdict of the jury entered judgment upon the whole case, so that the case might have been tried practically as it was, if it had been transferred to equity, and we do not see that any substantial right of appellant was prejudiced. Necessarily the practice where the same judge holding the same court exercises both equity and common law jurisdiction, must be different from the practice in those States where the equity jurisdiction is vested in one tribunal, and the common law jurisdiction in another and distinct tribunal. An action may be maintained in equity to reform a written contract for mistake, and in the same action the plaintiff may enforce the contract as reformed. (Worley v. Tuggle, 4 Bush, 168.)

In addition to this there is a distinction between an action brought to reform a written contract for mistake, or to cancel it for fraud, and a defense to a suit on a written contract which is based on fraud or mistake. By our Code an answer may contain both legal and equitable defenses. In this case the plaintiff sought to recover a certain sum of money of the defendant on a written contract. The sum of the defendant's answer is that the consideration for which he agreed to pay the money failed, and that by mistake of the parties the writing does not truly set out the contract, and so does not show the whole consideration for which he agreed to pay the money. In an action to recover on a written contract, the defendant may plead and show that the contract was obtained by fraud, or that it was executed by mistake. While frauds and

mistakes are of equitable cognizance when the purpose of the action is to cancel the writing or to reform it, fraud or mistake may be set up as a defense in a common law action to prevent the recovery of money which ought not in good conscience to be recovered. In Claxon v. Demaree, 14 Bush, 172, the suit was brought on a note. The defendant pleaded that it was executed in renewal of a former note, and that, by mistake, a credit of $208.00, which was on the former note omitted in calculating the amount for which the note was given. The court below sustained a demurrer to the answer, but on appeal the judgment was reversed, and it was held that, if the plea was true the note sued on was without consideration to the extent of the omitted credit. In the same manner when in an action on an order for goods taken by a drummer, the defendant pleaded that certain stipulations in the contract had been by mistake omitted from the writing, the defense was sustained and the instructions submitting it to the jury were approved. Becker v. Alvey, 27 R., 832. See also, Offutt v. Doyle, 135 Ky., 296. In Aufenkamp v. Storch, 138 Ky., 104, the landlord undertook to dispossess the tenant of a part of the property he had rented on the ground that the written contract did not include it. The tenant insisted that the written contract was drawn as it was by mistake of parties; and it was held by this court that the question whether there was a mistake or not should be submitted to the jury in the forcible detainer proceeding. In like manner, when a written contract is pleaded in bar of an action, the plaintiff may plead and show it was obtained by fraud or mistake. Thus, in suits for personal injury where a settlement is relied on by the defendant, and this is alleged by the plaintiff to have been procured by fraud or mistake, the question of fraud or mistake has in a number of instances been submitted to the jury. (See McGill v. L. & N. R. R. Co., 114 Ky., 358, and cases cited.) The defendant here does not seek to reform the contract. He simply seeks to set up a failure of consideration, and this he may do in this action, although in order to do this, he must establish the mistake in the written contract.

Before the adoption of the Code the defense here relied on could not be pleaded in an action at law. (Tribble v. Oldham, 5 J. J. M., 141.) But the defendant was not left without remedy. After a judgment against him in the ordinary action he could go into the court of equity

and have relief against the judgment by showing the mistake. (Coger v. McGee, 2 Bibb. 323; McCurdy v. Breathitt, 5 Mon., 234; Burchett v. Faulkner, 1 Dana, 100.) But under the Code the defense must be made in the original action. In Pomeroy's Code Remedies, Section 93, the rule on the subject is thus stated:

"In an action brought to recover damages for the breach of covenants contained in a deed of conveyance, the defendant may set up, as an equitable defense, a mistake in the instrument which should be corrected, as for example, in such an action on a covenant against incumbrances, the alleged breach being an outstanding mortgage, the defendant may show the original agreement to except such mortgage from the operation of the covenant, and that by mistake the exception was omitted."

Other illustrations are given in the text and in the notes.

Under the common law rule which is in force in Kentucky, the landlord is not required to make repairs during the term for which he has rented the premises to the tenant. (Proctor v. Keith, 12 B. Mon. 252; Helburn v. Mofford, 7 Bush. 169; Thomas v. Conrad, 25 R. 1630.) But while this is not his common law obligation, it is very usual for land owners to agree to keep houses in repair.

The proof on the trial by Langan and two witnesses was that the contract was made as he alleged. Dr. Logan denied this. But the fact is not denied that when the roof leaked, Langan notified Logan to fix it and that Logan in every instance complied with his request by attempting to fix the roof, and he spent about $135.00 in repairing the property, without once asserting that it was not his duty under the contract to keep it in repair, and this claim appears to have been first made after the suit was brought. We think also that the proof as to the condition of the property and the length of time that the water had been running in through the roof, justified Langan in abandoning the lease. The issue of fact was fairly submitted to the jury, and we see no reason on all the evidence, for disturbing their verdict. The court gave the jury this instruction:

"If you believe from the evidence in this case that the plaintiff leased the property in controversy to the defendants, and that he agreed to keep the storehouse in good condition and repair for the term of the lease so that it would answer the purpose for which it was being

rented, and that the agreement to that effect was, by mutual mistake of the parties to the contract, omitted from the written contract read in evidence, and that the plaintiff failed to keep the storehouse in such condition, and by reason thereof the same became unfit for the purpose for which it was rented, and that the defendant, Langan, on the 31st day of March, 1909, abandoned the leased premises because of such failure, then you should find for the defendant, Langan, but unless you so believe from the evidence you should find for the plaintiff.''

The instruction when read with the other instructions given the jury is practically the same as this court directed to be given in the case of Offutt v. Doyle, 135 Ky., 296, and Aufenkamp v. Storch, 138 Ky., 104, where the same question was presented.

Judgment affirmed.