### 127

Municipal Court of the City of Providence
vs
United States Fidelity and Guaranty Company

Law No. 42085

March 27, 1918

BARROWS, J. Heard on demurrer to a declaration for breach of a guardian's bond conditioned as per General Laws of 1909, Chap. 320, Sec. 1, Sub-section 3.

The declaration alleges the receipt by the guardian of certain money arising from the liquidation of the M'Neal Corporation, a realty company. By Sec. 3 of the Act to incorporate said corporation, passed by the General Assembly in June 1847, it is provided: "The number of shares of the capital stock shall be 640, and the shares shall be deemed real estate, and shall be transferred by deed, in the same manner, and with the same formalities and legal requisites as are necessary to the transfer of real estate, by the laws of this state, * * * ".

The corporation was wound up in due and legal form by process instituted by others than the guardian. Amounts representing the ward's ownership of 26 2-3 shares were paid to the guardian. Said payment was appropriated to his own use by the guardian. The ward has come of age. The guardian's account has been settled in the Probate Court and he has been charged with the money wrongly appropriated. The present suit is upon his bond and alleges as breaches of the conditions therein the embezzlement and non-payment.

Defendant guardian, now serving sentence for said embezzlement, filed no answer, but the surety upon his bond has demurred to the declaration on the ground that the stock and its proceeds were real estate for which the surety was not responsible upon the guardian's bond. Other grounds of demurrer are also set forth which seem to require no consideration because the declaration is not framed on the basis of an alleged embezzlement of real estate or on a transfer of the ward's title to real

### 128

estate by any act of the guardian.

We see no reason why the General Assembly could not enact that the interest of shareholders in the M'Neal Corporation should be real estate, and we therefore hold that so long as the corporation existed, its shares were real estate. Had the guardian sought to sell the same, he might have been required to give a special bond in accordance with our statues and in case of misappropriation of the proceeds of such sale, the surety upon the latter might have been liable and not the surety upon the original bond. There are no Rhode Island decisions on this point. The subject of a surety's liability, upon a general bond or upon a special bond, is treated with some fullness in 43 L. R. A., new series, 308 Note.

Those cases which decline to hold the general bond liable for misappropriation of proceeds of real estate where a special bond is required before sale thereof do so because the

attempted sale by the guardian is void without the giving of the special bond, and title to the real estate still remains in the ward.

Ruddy vs. Ruddy, 145 Ky. 245 (1911).

Those cases are distinguished from cases where the ward's title to real estate passes by reason of some action other than that of the guardian, such as condemnation or other statutory proceeding.

Colburn vs. State, 47 Ind. 310 (1874).

Mann vs. Mann, 119 Va. 630 (1916).

Ruddy vs. Ruddy, supra, at page 249, bottom.

Legal winding up of the corporation is a case of transfer of title without act of the guardian. Even though the shares were real estate, when the Company was wound up the ward ceased to be the owner of real estate and became merely a claimant for whatever sum of money was due in liquidation. It was his guardian's duty to collect and receive such money. Failure to do so would be a breach of the guardian's general bond to faithfully manage his ward's estate. We see no reason why the guardian should be required to ask the consent of the Probate Court to accept the proceeds arising from such procedure and there may be serious question whether the Probate Court could or would require a special bond before the guardian could accept such payment. As far as the guardian and ward are concerned, the transaction is an involuntary transmutation of real estate into personal property, and it is conceded that the guardian must collect the ward's personalty.

### 129

We see no occasion for seeking an analogy in equitable conversion in the present case and the questions that might arise if such doctrine were to be applied do not seem to be involved. The only consideration before the Court in this case is whether the surety is having an obligation imposed upon it which it did not agree to assume, and it does not seem to us that it is. The condition of the bond was that the guardian should file an inventory of real and personal property of the ward and that he should manage both for the best interests of the ward. The surety knew that mismanagement of real estate rendered it responsible. For example, the surety upon the general bond is liable for rents misappropriated or wrongful leasing of realty. Does the interest which plaintiff claims on the money embezzled differ from rents stolen by the guardian?

Woerner's American Law of Guardianship, P. 132.

Even conceding that the money should be considered as real estate, however, the case does not differ, as far as the surety's promise is concerned, from the guardian's mismanagement of the real estate whereby the real estate is allowed to produce no revenue or to go to ruin or is destroyed by positive act of the guardian. We think it was the duty of the guardian to collect this money and that his subsequent misapplication rendered the surety on his general bond liable.

The demurrer is overruled on all grounds.

For plaintiff: Mendell W. Crane.

For defendant surety: Mumford, Huddy & Emerson.