## Foley's Administrator, et al. v. Robertson's Guardian, et al.

(Decided June 18, 1926.)

### Appeal from Livingston Circuit Court.

1. Guardian and Ward—Guardian Entering into Private Agreement with Surety for Joint Control of Estate Held Liable as Guarantor of Safety of Assets of Estate, and His Surety as Participant Must Stand by Guardian's Liability for Loss of Funds of Estate.—Guardian, by entering into private agreement with his surety for joint control of assets of the estate, held to have thereby become a guarantor of safety of assets of the estate, and hence his surety is chargeable with guardian's liability for loss of funds of estate.

2. Appeal and Error—Failure to Transfer Suit Against Guardian and Surety on His Bond to Equity Docket Held Not Prejudicial, where Case was Tried Exactly as if it Had Been Transferred.—Even though surety on guardian's bond was entitled to have action against guardian and surety for recovery of balance due estate transferred to equity docket for purpose of settling guardian's account, where case was tried exactly as it would have been tried had it been transferred, held that surety was not prejudiced by court's failure to transfer.

3. Guardian and Ward—Surety of Guardian, Liable as Guarantor for Safety of Funds of Estate, Held Liable for Guardian's Failure to Produce or Pay Value of Liberty Bonds Belonging to Estate.—In action against surety and guardian on his bond for recovery of money due estate, based on guardian's settlement; where guardian was guarantor of security and funds of estate by reason of having entered into agreement with surety for joint control, surety is liable for guardian's failure to produce or pay value of Liberty bonds belonging to estate.

4.  Guardian and Ward—Guardian and Surety Held Liable for Certificate of Deposit, Where Guardian Accounted for Them in His Settlement as Part of Assets of Estate.—In action against guardian and surety on his bond for recovery of funds belonging to estate based on guardian's settlement, where guardian accounted for certificates of deposit amounting to $6,000.00 in his settlement, held that guardian and his surety were liable for such certificates, where certificates totaling $11,000.00, cashed by guardian, were not identified or connected by them with certificates belonging to estate.

5   Appeal and Error—Error of $90.00 in Judgment Awarding Over $17,000.00 Will Not Warrant Reversal.—In action against guardian and his surety to recover moneys belonging to estate, based on guardian's settlement, where plaintiff was awarded over $17,000.00, judgment will not be reversed because of an error of $90.00, for which defendants were entitled to credit.

6.  Appeal and Error—Finding for Plaintiff, Without Specifying Whether Guardian or Surety or Both Were Liable, Held Not Prejudicial to Surety, where it was a Coercive Verdict and Surety Made no Motion to Have Verdict Made More Definite.—In action against guardian's estate and his surety, failure of verdict, finding for plaintiff, to specify whether guardian or surety or both were liable, was not prejudicial to surety, where it made no motion before discharge of jury to have verdict made more definite and specific, and verdict was in reality a coercive verdict.

7.  Principal and Surety—Surety Entering into Private Agreement with Guardian for Joint Control of Estate, Thereby Making Guardian Guarantor of Assets of Estate, Held Not Entitled to Equitable Contribution from Cosurety Not a Party to the Agreement (Ky. Stats., Section 4659 et seq.).—Where guardian and surety entered into private agreement for joint control of estate, thus making guardian responsible as guarantor of assets of estate, held that surety was not entitled to seek equitable contribution from a cosurety who did not enter into such agreement merely because of his failure to comply with Ky. Stats., section 4659 et seq. in seeking his release.

W. A. BERRY, FRED FORCHT and B. F. WASHER for appellant.

FERGUSON & WELLS for appellees.

H. F. GREEN for Likens.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

In June, 1916, T. H. Robertson, a resident of Livingston county, Kentucky, died testate. His two infant sons, who are yet minors, were the principal beneficiaries of his will. He appointed George Barnes and U. B. Trimble the executors of his estate and the guardians of

his sons. They qualified as such, but in October, 1918, they resigned and J. D. Foley was appointed guardian of these infants in their stead, with the appellee, Albert Likens, as the surety on his guardian's bond. By a private arrangement between Foley and Likens, the latter had joint control with Foley of the assets of the estate of this guardianship. In the early part of 1920 Likens wished to be released as surety on Foley's bond. Without complying in any way with sections 4659-4663 of the Kentucky Statutes, Likens arranged privately with Foley for the latter to go before the county judge to make a periodic settlement of his accounts as guardian and to execute a new bond with new surety. The county judge agreed with Likens outside of court that the order he would enter in court when Foley executed a new bond should discharge Likens from further liability as surety. Accordingly, Foley did make a periodic settlement with the county judge, did execute a new bond with the appellant, the Fidelity and Casualty Company of New York, as his surety and the county judge did enter an order in the county court which recited that the new bond was accepted and approved by the court, "and Albert Likens, surety on a former bond, is now released from further liability, and said bond signed by him is now declared void and of no effect." This was on March 31, 1920. Foley and the surety company by a private agreement and arrangement between them provided for joint control of the assets of the estate, and the appellant designated one J. H. Grimes, cashier of a bank then being conducted at Tolu, Kentucky, as its agent to represent it in this joint control. Thereupon Likens, who was the president of the Citizens' Bank at Carrsville, Kentucky, turned over to Grimes representing the appellant and Foley the assets of the estate, which were promptly removed by them from the Citizens' Bank at Carrsville to the bank at Tolu. The assets of the estate at this time consisted largely of cash, although they also comprised some government bonds, some notes of individuals, some stock of an insurance company and some stock of the Salem Bank. After the assets were turned over to Foley and Grimes, the securities were kept in the vault of the Tolu bank and could not be removed without the joint assent of Foley and Grimes. The cash was deposited in the Tolu bank and could be checked out only by Foley's check, countersigned by Grimes. In the winter of 1922 and the spring of 1923

the appellant became dissatisfied with Foley's manage-
ment of the estate, and by a series of letters demanded
that he procure a new surety on his bond. It finally gave
him the notice called for by sections 4659, et seq., of the
statutes above noted, and thereupon Foley, on June 13,
1923, made a settlement with the county judge of Livings-
ton county, which settlement was reported to the county
court as of that date and allowed to lie over for exceptions
as the statute prescribes. On August 6, 1923, no excep-
tions having been filed, this settlement was approved and
confirmed. Foley was on that day removed as guardian
and the appellee, D. S. Webb, was appointed in his place.
Just a few days prior to this the bank at Tolu was de-
stroyed by fire, and it was then discovered to be insolvent.
None of the assets of this guardianship which were in the
custody of this bank were ever recovered, and, as a result,
with the exception of some stock in the Salem Bank, to be
presently noted, they were wiped entirely out of exist-
ence. Later its cashier, Grimes, was convicted of certain
misdoings in connection with the conduct of this bank,
and when this suit was tried was confined under such con-
viction in the Eddyville penitentiary. About a week after
the confirmation of his settlement in August, 1923, Foley
died insolvent and his son, Mark Foley, was appointed
administrator of his estate. Thereupon Webb, as guard-
ian of Robertson's two sons, brought this suit on the set-
tlement of June 13, 1923, against Foley's administrator
and the appellant to recover the sum of $18,367.23, being
the balance shown by that settlement to be due the estate
of these infants. In the petition, among other things, it
was averred "that no disbursements were made for said
wards after said settlement was made," and we find
nowhere in the pleadings any denial of this allegation.
Thereafter the appellant filed its answer and cross-peti-
tion against Likens, the substance of which answer was
that the balance of $18,367.23 shown by the settlement of
June 13, 1923, was not entirely cash but that it consisted
of Liberty Bonds of the par value of $3,500.00, capital
stock of the Salem Bank of the par value of $1,000.00,
capital stock of the Henry Clay Fire Insurance Company
of the par value of $360.00, seven individual notes, which
were itemized, aggregating in face value $3,762.50, and
the balance in cash. The answer charged that of this
balance in cash $6,000.00 represented certain certificates
of deposit in certain banks at Paducah which were left

by the testator Robertson and which by his will were forbidden to be cashed or withdrawn from these Paducah banks until the wards came of age; that Foley had in defiance of this prohibition in the will cashed such certificates of deposit; that in so doing he had not come into possession of this $6,000.00 lawfully or as guardian, and that therefore the appellant, as his surety, was not liable on its bond to this extent. The answer further alleged that all these securities and cash were deposited in the bank at Tolu at a time when to all outward appearances it was a good, solvent bank, and that neither Foley nor the surety ever knew of its insolvent condition, nor was such condition apparent in the community where it was located prior to the crash which followed the fire in August, 1923. It alleged that Foley, in placing the cash and securities in the Tolu bank, had exercised due care and caution, and for this reason neither he nor his surety was liable in this action. Appellant by its cross-petition sought a recovery against Likens on the theory that Likens had not been legally released as surety on Foley's bond by the order of the county judge on March 31, 1920, and hence was still liable jointly with it to the estate of these infants. Appellant prayed that to the extent of one-half of any liability the court should adjudge against it in this suit Likens should exonerate it. The averments of this answer and cross-petition were put in issue by Webb and Likens. Foley's administrator filed an answer admitting liability on the part of Foley's estate. After the issues had long since been made up this case came on for trial at the December, 1924, term of the court. Appellant then for the first time moved that this action be transferred to the equity side of the docket for trial. This motion was overruled. Appellant then secured a continuance of the cause until the April, 1925, term of the court, when it was tried. On this trial appellant introduced no evidence, and at the close of the appellee's testimony the court peremptorily instructed the jury to find for the appellee in the sum of $17,367.23 and for the cross-defendant Likens. Appellant's motion and grounds for a new trial having been overruled, it brings this appeal.

The knot presented by this record may be easily untied if we first loosen it by determining what effect the private arrangement between Foley and the appellant for joint control of the assets of this estate had upon their respective obligations to the beneficiaries of that estate.

We have no legislation in this state authorizing a fiduciary and his surety by private arrangement to effect a joint control of the assets of the trust estate. The court in appointing a fiduciary does so by reason of the trust and confidence the court has in its appointee. It is to such appointee that the court confides the custody and possession of the trust estate. It is to him alone that the court looks for the proper management, control and custody of such estate. If by a private arrangement this appointee yields in any measure to any one his sole control of such estate, what then is his liability thereafter to the beneficiaries of such estate? We have been cited to no case in this state bearing directly on this point, nor have we after an extensive search been able to find one. But this exact question was considered in the case of Re Wood, 159 Cal. 466, 114 Pac. 992, 36 L. R. A. (N. S.) 252, in an opinion of such cogent reasoning that we have decided to quote from it at length. The question involved in that case was the right of a guardian to claim as a credit in his settlement with his ward certain money he had deposited in a bank in San Francisco which had failed. At the time of the deposit this bank to all outward appearances was a good, safe bank and, as the opinion says, there was nothing to impugn the good faith of the guardian in making the deposit. This guardian at the time of his appointment as such made a private arrangement with the Pacific Surety Company, which was the surety on his guardian's bond, whereby the surety company was given joint control with him of the guardianship estate. The arrangement provided that any money deposited in this San Francisco bank could be checked out by the guardian only when his checks were countersigned by the surety company. The California court held that by thus yielding up his sole right of control over the assets of the estate, the guardian became guarantor of the safety of the funds of the estate, irrespective of his motives or whether his surrender of the control was the cause of the loss of the fund. In arriving at this conclusion the court said:

"In such a case, in the event of loss of the fund, the court will not enter upon an inquiry whether the loss is due to such abdication of control. . . . The same principle was declared by the United States Supreme Court in Forsyth v. Woods, 11 Wall. 484, 487, 20 L. Ed. 297, 209, where the court said:

'Letters of administration are a trust. They are granted by the probate court or ordinary, because of confidence reposed in the grantee. They require him to take exclusive charge of the personal property of his intestate, and to bring to its administration his own personal attention and judgment. He has no right to allow others to control it or to share in its administration. If he does, he exposes it to unnecessary hazards, and subjects it to the disposition of persons in whom the officer of the law has reposed no confidence.' Such limitation on the control of the trust property by the trustee as is shown by the facts of this case has been considered at great length in at least two cases, and in each case the conclusion was reached that such a limitation was prohibited by this rule. In Perry on Trusts, section 443, we find it declared that, if the trustee deposits trust money 'in such manner that it is not under his own exclusive control, as where money is deposited in bank so that it cannot be drawn without the concurrence of other persons, the trustee will be liable for the failure of the bank, on the principle that it is the duty of the trustee to withdraw the money from the bank upon the slightest indication of danger or loss, and he cannot perform this duty promptly if he is clogged by the necessity of procuring the concurrent action of other persons.' The leading case in England of White v. Baugh, 3 Clark & F. 44, 9 Bligh, N. R. 181, and the case of Fidelity & Deposit Co. v. Butler, 130 Ga. 225, 16 L. R. A. (N. S.) 994, 60 S. E. 851, in each of which the facts, in all respects material to the question under consideration, were the same as those in the case at bar, and in each of which the rule above declared was held applicable, show reasons for the rule additional to that given in the above quotation from Perry on Trusts. The reasons for the rule stated in those decisions are substantially stated in respondent's brief, being that such an arrangement is contrary to public policy, as incompatible with the absolute control which court and guardian should have at all times over the fund in order to preserve it, as placing temptation in the way of officers of surety companies, in no way under the jurisdiction of the court, to obtain favors from weak banks in return for the bestowal or continuance

of deposits, as hindering the guardian from seeking more favorable investments of the funds, and as being, in effect, a pledge of the fund to obtain the bond required by law. The discussion by Lord Brougham and Lord Lyndhurst in White v. Baugh, *supra,* and the exhaustive opinion of Justice Lumpkin in Fidelity & D. Co. v. Butler, in which all of the authorities on the question are reviewed and discussed, satisfy us that the rule forbidding the surrender by a trustee of his control over trust funds, on penalty of becoming a guarantor of the fund, an eminently salutary rule, applies to such an arrangement between the guardian and his surety, as is shown by the evidence in this case. No authority in conflict with these views has been cited or found by us, and we know of no reasonable ground for a material distinction between such a limitation on the guardian's control of the trust fund as is shown by the facts herein, and the case of a trustee parting altogether with such control. As substantially said in Fidelity & D. Co. v. Butler, the effect of such an arrangement is to give a surety a complete veto power in the matter of any proposed change of a place of deposit no matter what circumstances may arise. Whether this arrangement could be enforced or not, as between the guardian, the surety and the bank, it did limit and impede the actual control of the fund in such manner as to bring it within the operation of a rule that is thoroughly established, and that appears to us to rest upon sound considerations of public policy. If it be desired to provide some method by which a surety company may have some control of a trust as to which it has merely become surety for the officer of a court, such as a guardian or administrator, to whom the court has given such fund in charge, the method must be provided by the legislative department of the government, for the law as it now stands in this state does not authorize it."

The case of Fidelity & Deposit Co. of Md. v. Butler, 130 Ga. 225, 60 S. E. 851, 16 L. R. A. (N. S.) 994, referred to in the Wood case, *supra,* sustains the principle relied on in the Wood case. It exhaustively goes into the authorities, and especially the English case of White v. Baugh, 3 Clark & F. 44. The principle of these cases

seems to us to be sound. It is the duty of the fiduciary at all times to have complete control over the estate intrusted to his care. His judgment as to the proper depositary should not be influenced in the slightest by any consideration other than such as may appeal to his sound business judgment. He has no right to have that judgment swayed by the influence of a surety to whom he has surrendered a part of the control of the estate. It is the danger of the possible use of such influence as much as the actual use of it which renders this arrangement unlawful and wrong. Further, the fiduciary should at all times have it within his power and discretion to immediately withdraw the assets of the estate from such depositary so selected without the possibility of any veto power being exercised upon such action on his part and without the necessity of undergoing the delay which may be caused by his effort to secure the assent of his surety. In the case before us the assets of the estate were withdrawn from a bank then solvent and still solvent and placed in a bank under the joint control of Foley and his bondsman, represented by the cashier of the new bank, who later turned out to be a defaulter. The possibility of danger against which the principle of law laid down in the Wood case seeks to guard is well illustrated by this sequence of events. We therefore hold that when Foley entered into the arrangement he did with the appellant concerning the joint control of this estate, he thereupon became a guarantor of the safety of the assets of the estate, irrespective of his motives or whether his surrender of the control was the cause of the loss of the fund. It follows that appellant as his surety, and especially as a participant in such arrangement, must stand behind Foley's liability as thus determined.

Having determined the measure of the liability of Foley and the appellant, we will now address ourselves to the grounds relied on for a reversal in this case. First, as to Webb, the present guardian of these infants: It is earnestly argued that the court erred in overruling a demurrer to the petition and in refusing to transfer this case to the equity side of the docket. Appellant insists that before appellee could bring this common law action against either the former guardian or his surety the accounts of the former guardian should have been settled by an equitable action. It will be remembered that Foley had made a settlement of his accounts in June, 1923. In

his petition appellee alleged that since that settlement no disbursement had been made by the guardian for or on behalf of the wards, which averment was never denied by appellant. Appellant by its answer did not deny that the guardian was properly charged in this June settlement with the sum of $18,367.23, except to the extent of $6,000.00 representing the alleged certificates of deposit of the banks in Paducah. Neither did appellant claim that the principal or the nature of the assets had been changed between that settlement and Webb's appointment as guardian. Having joint control of the fund as it did, appellant was as much charged with the notice of any change, had there been any, as was Webb. Its silence in this respect must be taken to mean that there had been no change. Webb's suit was, in effect, a charge that there had been no such change. Indeed, appellant's position with regard to the guardianship assets was that this $18,-367.23 did not represent cash, as the settlement seemed *prima facie* to indicate, but was made up partly of cash and partly of securities, which were specifically mentioned and set out in the answer. Thus it will be seen that the issue was not as to the amount for which Foley was properly chargeable except to the extent of the item of $6,000.00, but only, with that exception, as to the character of the assets making up this amount. On the trial, the court permitted the introduction of evidence on all the issues presented. Appellant saw fit to introduce none except what it was able to extract on its cross-examination of appellee's witnesses. The evidence produced by appellee was not extensive and could be easily carried in the mind. The case was decided by a coercive verdict. Hence it is apparent that, to all intents and purposes, this case was tried exactly as it would have been tried had it been transferred to the equity docket and heard orally. We fail to see how, conceding that appellant was entitled at the late day it made its motion to transfer this case to equity, to have it done, it was prejudically affected by the court's failure to do so. Cf. Logan v. Langan, 145 Ky. 599, 140 S. W. 1031. The issues were really few in number. The instruction offered by appellant and refused fully demonstrates this. The evidence was not voluminous. The court permitted appellant to go into the question of the character of the assets of the estate and gave appellant credit for the item of the Salem Bank stock amounting to $1,000.00 just the same as it would

have done had this been an equitable action to settle the accounts of Foley as guardian. The final verdict was really the judgment of the court. Hence, we are of opinion that, conceding, without deciding, appellant was entitled to have this action transferred to the equity docket for the purpose of settling the accounts of Foley as guardian, it was not prejudiced by the court's failure to do so as the case was tried practically along the lines by which appellant now insists it should have been. For the same reason any error in overruling the demurrer to appellee's petition was cured by the way the issues were presented and tried. The court committed no error in peremptorily instructing the jury to find for appellee Webb in the sum of $17,367.23, except to the extent of $90.00 for which appellant should have credit, as we shall presently see. This $17,367.23 is the $18,367.23 sued for less the value of the Salem Bank stock which, it was shown by the evidence, was included in the assets of the estate making up this $18,367.23, and which was salvaged by appellee Webb after the failure of the Tolu bank. So far as appellant's contentions with regard to the seven notes of individuals aggregating $3,762.50 being included in these assets are concerned, it is sufficient to say that appellee showed that none of these notes were on hand uncollected at the time of the June settlement except the Threlkheld note, and appellant introduced no evidence to the contrary. As to the Threlkheld note, it is shown that appellee has collected $90.00 on it since this suit was filed, and for this amount appellant should have credit.

As to the Liberty Bonds, as Foley was a guarantor of the safety of the securities and funds of this estate, as we have seen, so appellant is liable for the failure of Foley's estate to produce them or pay their value. So far as the Henry Clay Fire Insurance stock of the par value of $360.00 is concerned, the settlement of June, 1923, shows that Foley had once before been charged with this investment and it had been disallowed in a former accounting. It was not charged against Foley on this June settlement and hence was no part of this lawsuit. We have left only the item of $6,000.00 represented by certificates of deposit of the Paducah banks. The evidence plainly establishes without any contradiction that the certificates of deposit cashed in November, 1918, by Foley had been issued in the preceding May and were not payable to the testator Robertson. Further, they totaled

$11,000.00. The appellant does not identify or connect these certificates with any certificates left by Robertson at the time of his death, and although under the authority of Rudy v. Rudy, 145 Ky. 245, 140 S. W. 192, it may be true that had appellant identified this $11,000.00 with any certificates the testator mentioned in his will it would not here be liable for such sum, at least to the extent of the testator's certificates, a point we need not decide, yet as appellant failed to do so and as Foley had accounted for it in his setlement as a part of the assets of the estate, and it is not shown to be otherwise; Foley is liable for it and so is appellant. Thus, it is seen, that the only credit to which appellant was entitled and which it did not get was the item of $90.00. Both Foley and appellant were, under the facts of this case, guarantors of the assets of the estate. Hence the court, had he been sitting as the chancellor, would have had to give the appellee the judgment he got, subject to this $90.00 correction, and if he correctly tried this case as a common law action, he committed no error in peremptorily instructing the jury as he did, except that he failed to give appellant credit for the item of $90.00 noted. However, for so small an error in so large a case, this court will not reverse the judgment. Kappa v. Brewer, 207 Ky. 61, 268 S. W. 831.

What we have said also disposes of appellant's contention that the form of the verdict, which simply finds for appellee without specifying whether against Foley's estate, the appellant, or both, is too indefinite upon which to enter a judgment. Appellant made no motion before the jury was discharged to have this verdict made more definite and specific. As stated, it was a coercive verdict and in reality the verdict of the court rather than that of the jury. If this was properly an equitable action, no verdict of the jury was needed. If it were properly a common law action, the court was not misled in entering the judgment it did on the verdict by its form, for the verdict was in truth the verdict of the court, and by its judgment the court plainly indicated the effect it intended the verdict to have. Appellant was plainly not prejudiced by the form of the verdict. See Davis v. Stone, 172 Ky. 696, 189 S. W. 937.

It therefore results that as to appellee Webb, subject to a modification by way of a credit in favor of appellant for $90.00, the judgment of the lower court is correct and, as so modified, it is affirmed.

With regard to Likens, appellant contends that under the authority of Barker v. Boyd, 24 Ky. L. R. 1389, 71 S. W. 528, the purported order of March 31, 1920, did not have the effect of releasing Likens as surety on Foley's bond, because of Likens' failure to comply with sections 4659, et seq., of the statutes, and that as between him and the estate of these infants he is jointly responsible with the appellant. Waiving the question as to the sufficiency of the statement of appeal filed herein to bring Likens before this court, and again conceding, without deciding, that the position of appellant as noted is sound, it is yet a different proposition to say that Likens is responsible to appellant to the extent of his liability to the wards. The right of the appellant, if any, to call upon Likens to stand half of the loss here involved arises out of the equitable principle of contribution. Likens was no party to the agreement between Foley and the appellant which resulted in the joint control by them of the estate of these wards. Likens had just as much right as long as he was surety for Foley to demand and require that Foley's control of the estate be unfettered as did the wards, and if Liken's co-surety increased Likens' liability through no fault on the part of Likens, as it did in this case, such co-surety ought not to be permitted to enforce its claim for contribution against Likens. We have seen that Foley by surrendering his sole control of the estate became a guarantor of the safety of the estate. This was a vastly more onerous burden to thrust on Likens as Foley's surety than Likens would have been under as surety for Foley had the joint control by Foley and appellant never been arranged. Now appellant was just as responsible for this joint control as was Foley and it cannot take advantage of the condition it brought about, to place upon Likens a liability which he would not have been under but for its action in this regard. 13 C. J. 826. See also Morgan v. Morgan, 158 Ky. 830, 166 S. W. 602. It results then that on equitable principles, appellant had no right to seek the contribution it did in this case and the lower court did not err in absolving Likens from liability to the appellant. The judgment of the lower court being in conformity to the views expressed in this opinion it is therefore, as modified to the extent of allowing appellant a credit of $90.00 as against appellee Webb, affirmed.

Whole court sitting.