## Fidelity & Casualty Co. of New York v. Pippin.
Jan. 10, 1939.

CURTIS & CURTIS and JERRY A. HOGAN for appellant.

CHARLES LEIBSON and JOSEPH J. KAPLAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Reversing.

On February 1, 1927, Richard D. Talley, the father of appellee and plaintiff below, Alta Pippin, was, by the county court of Jefferson county, appointed her guardian. He qualified and executed bond as required by law with the appellant and defendant below, Fidelity and Casualty Company of New York as his surety. The total amount of the estate of the ward that went into the hands of the guardian was $1,000, which appears to have been cash, since there is nothing in the record showing to the contrary. Following the appointment (the time not being shown by the record) the $1,000 estate of the ward in the hands of the guardian was invested in first mortgage real estate bonds of the Crescent Hill Baptist Church, Incorporated, in Louisville, Kentucky—the custody of which the guardian gave to appellant, his surety, and it placed them in a lock box in the First National Bank of Louisville, Kentucky, for the unlocking of which it was given two keys—one of which it retained and the other was delivered to the guardian, its principal, and which arrangement prevented either of them from opening the box containing the bonds without the consent of the other.

Sometime later the church re-organized and rearranged its indebtedness through a resort to the procedure provided by section 77B of the National Bankruptcy Act, 11 U. S. C. A., sec. 207, whereby its former outstanding first mortgage bonds were replaced by new ones bearing a less rate of interest and with extended due dates; but the original bonds in which the ward's estate was invested were never surrendered to the church and newly issued bonds accepted in lieu thereof because of pleaded facts hereinafter stated.

Plaintiff, having arrived at the age of 21 years, and having married in the meantime, filed this action in the Jefferson circuit court, against her father as her guardian and appellant as his surety, on July 30, 1936, in which she sought judgment for the entire amount of her estate in the hands of her guardian on the ground that no settlement of her guardian had been made, and that she had demanded payment of him and of his surety but it was refused. Only appellant, the surety, answered, the first paragraph of which admitted the appointment of the guardian and its becoming his surety, but denied other material facts. In the second paragraph of its answer it affirmatively pleaded: That the estate of the

guardian was rightfully invested in the first mortgage real estate bonds of the church, pursuant to the provisions of section 4706 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes; that the securities in which the ward's estate were invested were placed in the lock box and in the manner above described pursuant to the joint consent of the guardian and his surety; that when the church reorganized and rearranged its indebtedness the guardian refused—after demand made by appellant—his consent for the box to be opened and the securities obtained to be delivered to the church, or to receive therefor its substituted securities and that the guardian had continued his refusal to cooperate with the surety in obtaining the original investment from the lock box to be delivered to the ward, or for any other purpose; that such refusal on the part of the guardian was consented to by the ward, both before and since arriving at age, and was the result of collusion and conspiracy between them and which was entered into in order to impose upon it liability for the entire estate of the ward—notwithstanding it had all the while endeavored to obtain possession of the securities of the ward so as to deliver them to her in settlement of the guardianship, but was prevented from doing so because of the facts stated. It averred that it was ready and willing as soon as the lock box could be opened to deliver the securities to the ward; but that if she should refuse to accept them then to deliver them to the receiver of the court. It prayed for a dismissal of the petition and for a rule against the guardian requiring him to permit the opening of the lock box in order to obtain the securities for such purpose.

A rule was issued to which the guardian responded, but the court held the response insufficient and made the rule absolute. In the meantime plaintiff, the ward, filed her demurrer to the answer and to each paragraph thereof, which the court sustained as to paragraph two of that pleading. Defendant declined to plead further and judgment was rendered against it and the guardian (its principal) for the amount found to be due the ward —to reverse which the surety prosecutes this appeal, in which there is presented as the sole question for determination the sufficiency of the second paragraph of appellant's answer.

The court based its ruling in sustaining the demur-

rer exclusively upon the case of Foley's Adm'r v. Robertson's Guardian, 215 Ky. 647, 286 S. W. 851. In that case, as we interpret it, joint control of the ward's estate was exacted by and given to the surety before becoming such and as a condition precedent to the incurring of the obligation as surety. Whether or not that was true in this case is not manifested by any pleading, and we are not informed by them as to the manner, means or reason for giving to appellant—as surety in this case—the control of the securities of the ward in which her estate was invested by her guardian. However, appellant's counsel in their brief call our attention to section 687 of our statutes supra, in which is found this language: "And in case where any such company may be accepted as such surety, it shall be lawful for the court or officer taking the bond, or for any officer *or fiduciary* for whom the said company shall become surety, to place any bonds, stocks, securities, money or valuable in the custody of such company for safekeeping." (Our italics.)

That section was enacted in 1893 and amended in 1922, and the opinion in the Foley Case nowhere refers to it, nor did any of the attorneys in that case refer to it in their briefs. It is, therefore, possible that if the court's attention had been called to that statute the court might have rendered a different opinion in that case, although there are other material differences in the facts of the two cases which may have justified the ultimate conclusion reached in the Foley opinion, since it appears therefrom that portions of the ward's estate became entirely lost because of the control exercised by the surety in that case pursuant thereto.

The investment in this case is still intact and—according to the averments of the answer which the demurrer thereto admitted—it was made pursuant to authority conferred by law. When done, neither the guardian nor his surety becomes liable for depreciation of the investment, unless it could have been prevented by the exercise of proper care on their part after obtaining knowledge of the facts. No such grounds of liability were presented to the court as a basis for its ruling in sustaining the demurrer of which complaint is made. The part of that pleading which the court held insufficient showed a complete compliance with the law in such cases made and provided, and it is our conclusion

that it was error to sustain the demurrer thereto. Subsequent pleadings may make issues upon which liability of the guardian and its surety may be predicated, and the prima facie defense made by the second paragraph of defendant's answer be avoided. But in the absence of such issues, we construe the paragraph of the answer to which the demurrer was sustained as presenting a complete defense, and the court erred in sustaining the demurrer filed thereto.

Wherefore, the judgment is reversed, with directions to set it aside and to overrule the demurrer to the second paragraph of the answer, and for proceedings consistent herewith.